**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al., | No. CV-23-00715-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Forest Service, et al., | |
| Defendants. | |

Pending before the Court is Federal Defendants' Motion to Dismiss ("Defendants' Motion"). (Doc. 17). Plaintiffs have filed a response, (Doc. 20), and Defendants have filed their reply. (Doc. 24). Also pending is proposed Intervenors' Motion to Intervene as Defendants ("Intervenors' Motion"). Both Plaintiffs and Defendants have filed responses to Intervenors' Motion. (Doc. 21; Doc. 22). The Court now rules.

**I.    BACKGROUND**

Plaintiffs bring suit for declaratory judgment and injunctive relief regarding Defendants' failure to conduct analysis under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, before allegedly taking the following actions: (1) entering into an Intergovernmental Agreement with the State of Arizona in 2017; and (2) "approving and implementing" a Salt River Horse Management Plan in 2023. (Doc. 20 at 5). The affected land is an area in the Tonto National Forest that the U.S. Forest Service ("USFS") has designated as the Lower Salt River Recreation Area. (Doc. 1 at 7). Wild horses entered the land in the 1970s and remain there—in numbers exceeding the land's

carrying capacity and threatening the viability of other species in the area—as of the filing of the present action. (*Id.* at 7, 8–9).

In December 2017, the U.S. Department of Agriculture, Tonto National Forest and the State of Arizona ("Arizona") entered into an Intergovernmental Agreement ("IGA") regarding the management of the wild horses in the affected area. (*Id.*). The IGA delineated responsibilities for both parties. Defendants were to be responsible for the following: (1) constructing fences as needed around the area; (2) funding and organizing a collaborative process for interested parties to propose a management plan; (3) conducting NEPA analyses when necessary; (4) completing a carrying capacity study and provide the results to Arizona; (5) issuing authorizations to Arizona as needed to manage the horse herd; (6) being responsible for range and riparian monitoring within the area; (7) meeting with Arizona twice per year; and (8) providing technical expertise to Arizona regarding the horse herd management. (*Id.*). Arizona's responsibilities included playing an active role in developing the management plan, presenting the plan to Defendants to determine whether NEPA analysis was necessary, and using Arizona's State Procurement Office to secure third parties to implement a management plan once necessary authorizations were obtained, among others. (*Id.* at 8).

The collaborative that was formed from the 2017 IGA consisted of various stakeholders, including federal, state, and local officials, among others. (*Id.* at 9). The collaborative recommended reducing the horse herd population to a maximum of approximately 100 horses through various mechanisms. (*Id.*). However, Arizona adopted—and Plaintiffs allege that Defendants approved[1]—a plan that would take longer to implement, in spite of Defendants' various concerns with the approach. (*Id.* at 9–10).[2]

---

[1] The evidence Plaintiffs use to support this allegation consists of a letter purportedly sent by Mark Killian, the Director of the Arizona Department of Agriculture, which states that the plan had been approved by the USFS. Plaintiffs do not, however, provide authentication or any affidavits based on individuals' personal knowledge as to whether the USFS approved the plan. *See* Section III.A.ii., *infra*.

[2] Defendants have provided a declaration from Neil Bosworth, the Forest Supervisor for the Tonto National Forest. The declaration states that based on Mr. Bosworth's personal knowledge, neither he nor anyone else in the USFS approved the Horse Management Plan. The Court may use this declaration to resolve factual disputes for the limited purpose of evaluating subject matter jurisdiction under Rule 12(b)(1). *See* Section II.B., *infra*.

Plaintiffs allege that ongoing harm is occurring in the affected area, threatening the various animal species that inhabit it. (*Id.* at 10).

## II. LEGAL STANDARD

### A. Standing & Mootness

For a court to hear a plaintiff's case, the plaintiff first must establish standing and satisfy other related justiciability requirements, including showing that a case is not moot. *See Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 617 (9th Cir. 1999). A plaintiff has the burden of establishing the three elements of Article III standing, which are the following: (1) they have suffered an injury in fact that is concrete and particularized; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision. *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs asserting a procedural injury must show "that the procedures in question are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003) (citation omitted).

Once a plaintiff establishes a procedural injury, the burden for the last two prongs of the standing inquiry lessens. *Salmon Spawning*, 545 F.3d at 1226. "Plaintiffs alleging procedural injury 'must show only that they have a procedural right that, if exercised, *could* protect their concrete interests.'" *Id.* (emphasis in original) (quoting *Defenders of Wildlife v. U.S. E.P.A.*, 420 F.3d 946, 957 (9th Cir. 2005)).

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The Court must evaluate whether it would be able to grant "any effective relief." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). Courts recognize an exception to mootness when the otherwise moot dispute is capable of repetition but evading review. This exception applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, *and* (2) there is a reasonable expectation

that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (emphasis added).

### B. Subject Matter Jurisdiction & 12(b)(1)

Federal courts are courts of limited jurisdiction and can thus only hear those cases that the Constitution and Congress have authorized them to adjudicate—namely, cases involving diversity of citizenship, a federal question, or cases to which the United States is a party. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a case lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Accordingly, on a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff must demonstrate that subject matter jurisdiction exists to defeat dismissal. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

"Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 210 (9th Cir. 1989) (citations omitted). The party opposing the motion then must present "affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* In sum, the court does not abuse its discretion by looking to extra-pleading material, even if it does so to resolve factual disputes, when considering a Rule 12(b)(1) motion to dismiss. *Id.* (citing *Thornhill Publ'g Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).

As a general rule, the United States may not be sued unless it has waived its sovereign immunity. *Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804, 806 (9th Cir. 2003). Accordingly, unless the United States consents to be sued, the Court lacks subject matter jurisdiction over claims against the federal government. *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

## III. DISCUSSION

### A. Defendants' Motion to Dismiss

#### i. Standing & Mootness

The Court first addresses standing issues raised by Defendants relating to both of Plaintiffs' NEPA claims. The Court finds Plaintiffs' first NEPA claim regarding Defendants' IGA with the State of Arizona to be moot and, relatedly, to fail on the redressability prong of the standing inquiry. The IGA Plaintiffs challenge expired by its own terms in 2022 and has not been renewed. (Doc. 24-1 ¶ 5). Moreover, there is no relief the Court could grant as to the formation and execution of this agreement because the actions taken pursuant to this agreement have already been done, and any further action taken by Defendants is not pursuant to this agreement. Additionally, Plaintiffs may still seek judicial review for the harm they have alleged—the excessive horse population—under their second NEPA claim. *See Aluminum Co. of America v. Bonneville Power Admin.*, 56 F.3d 1075, 1078 (9th Cir. 1995) (finding challenge to flow augmentation measures moot when the relevant record of decision had expired, the agency's current actions were not pursuant to the expired record of decision, and the plaintiffs had adequate means to challenge the measures otherwise).

The Court further finds that the mootness exception does not apply because the IGA lasted five years, meaning Plaintiffs had ample time while the IGA was in effect to file a challenge against the agreement and obtain judicial review. *See Nw. Res. Info. Ctr., Inc. v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1060, 1070 (9th Cir. 1995) (finding the five-year duration of a permit to be "more than adequate time to obtain judicial review" and thus finding a late challenge to the permit moot). Plaintiffs did not even bring a challenge until April 2023, well after the IGA had expired. Thus, Plaintiffs lack standing as to the IGA, their first NEPA claim.

Regarding Plaintiffs' second NEPA claim against the Horse Management Plan, the Court first notes that Defendants do not raise arguments related to the first prong of the standing inquiry. Defendants do not address the second prong in detail, but they do raise

- 5 -

questions of causation, which the court now discusses. In NEPA cases, the standard for causation is "relaxed" compared to other cases, requiring merely a "reasonable probability" that Plaintiffs' harm was caused by Defendants' failure to conduct NEPA analysis. *Bell v. Bonneville Power Admin.*, 340 F.3d 945, 951 (9th Cir. 2003). Here, similar to the analysis below, Defendants' failure to conduct a NEPA analysis is a reasonably probable cause of Defendants' failure to protect Plaintiffs' interests, and thus a reasonably probable cause of Plaintiffs' harm.[3]

As for the third prong of redressability, the Court must make a careful distinction between its inquiry into standing—which hinges on whether NEPA analysis could have redressed Plaintiffs' harm—and its inquiry into the merits—which hinges on whether Defendants are required to have conducted a NEPA analysis. The Court focuses on the former and thus does not address here whether Defendants were required to conduct NEPA analysis. Although the Court resolves the factual dispute as to USFS approval of the Plan in favor of Defendants for purposes of subject matter jurisdiction,[4] the Court finds that Plaintiffs have at least shown that had Defendants conducted a NEPA analysis, they may have chosen to intervene in the Horse Management Plan, which *could* have redressed Plaintiffs' harms for purposes of the standing analysis. Thus, the Court finds that Plaintiffs have standing to challenge the Horse Management Plan.

### ii. Subject Matter Jurisdiction

Defendants additionally argue that because the two actions that form the basis of Plaintiffs' NEPA claims do not constitute "final agency actions," the Court lacks subject matter jurisdiction over Plaintiffs' claims.[5] (Doc. 17 at 11). For a plaintiff to bring an action against a federal agency, the United States must waive its sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). NEPA does not subject the EPA to suit, so plaintiffs wishing to bring claims under NEPA must establish waiver of sovereign

---

[3] The Court notes here, as below in the third prong, that whether Defendants should be required to conduct the NEPA analysis (merits) is separate from whether Defendants' failure to conduct the NEPA analysis may have caused Plaintiffs' injury (standing).
[4] The Court addresses subject matter jurisdiction in detail in Section III.A.ii., *infra*.
[5] Because the Court has found that Plaintiffs' first NEPA claim is moot, the Court addresses only Plaintiffs' second NEPA claim for subject matter jurisdiction purposes.

immunity under the Administrative Procedure Act ("APA"). *Rattlesnake Coalition v. U.S. E.P.A.*, 509 F.3d 1095, 1103 (9th Cir. 2007) (citing 5 U.S.C. §§ 702, 704). "The APA permits a citizen suit against an agency when an individual has suffered 'a legal wrong because of agency action' or has been 'adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Id.* (quoting 5 U.S.C. § 702). A plaintiff's claim brought pursuant to the APA must concern a "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704.

Agency action is "final" when (1) the action marks the "consummation" of the agency's decision-making process, and (2) the action determines rights or obligations or is one from which "legal consequences will flow." *See Bennett v. Spear*, 520 U.S. 154, 178–79 (1997) (citations omitted). The action must be a "definitive statement of the [agency's] position, *Ukiah Valley Med. Ctr. v. F.T.C.*, 911 F.2d 261, 264 (9th Cir. 1990), or the agency's "last word on the matter" at issue. *Oregon Nat. Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 984 (9th Cir. 2006).

Although the Court has not located any such explicit authority by the Ninth Circuit Court of Appeals, the D.C. Circuit has held that "[i]n the NEPA context, the 'final agency action' required by the APA must also be a 'major federal action' under NEPA.[6] *Karst Environmental Educ. and Protection, Inc. v. U.S. E.P.A.*, 475 F.3d 1291, 1295 (D.C. Cir. 2007). Under the "major federal action" analysis, the Court must examine "'the nature of the federal funds used and the extent of federal involvement.'" *Rattlesnake Coalition*, 509 F.3d at 1101 (quoting *Sierra Club v. Penfold*, 857 F.2d 1307, 1314 (9th Cir. 1988)). Significant federal funding can turn otherwise state action into federal action, but the Court must consider whether there is a great disparity in the expenditures of the local and federal portions of the entire program. *Id.* Regarding federal involvement, local action does not become federal action unless the federal agency retains power, authority, or control over

---

[6] Upon research, the Court located positive treatment of *Karst* by District Courts within the Ninth Circuit. *See, e.g.*, *Alliance for the Wild Rockies v. Gassman*, No. CV-21-105-M-DLC-KLD, 2022 WL 20287353, at *11 (D. Mont. Sept. 30, 2022) (quoting the same sentence from *Karst*). The Court did not, however, locate any Ninth Circuit Court of Appeals precedent addressing *Karst*.

the state project. *Id.* It is not enough for the federal agency to give nonbinding advice or even merely approve a state plan. *Id.* at 1102 ("[A] local plan does not become a major federal action subject to NEPA regulations merely upon its approval by a federal agency."). Defendants urge the Court to analyze their Rule 12(b)(1) motion under the approach outlined in *Karst*; however, as discussed below, the Court does not reach this issue herein.

There is a factual dispute as to whether Defendants approved the Horse Management Plan that is the subject of Plaintiffs' second NEPA claim. However, as the record currently stands, Defendants have provided a sworn declaration from the USFS Forest Supervisor for the Tonto National Forest based on his own personal knowledge from that role. Plaintiffs have provided a letter that purportedly was sent by the Director of the Arizona Department of Agriculture, providing no indication as to whether or how the Director had personal knowledge of whether the plan was approved by the USFS. Thus, the Court resolves this factual issue in favor of Defendants for subject matter jurisdiction purposes only and finds that no final agency action was taken by the USFS.[7]

Because of the foregoing, the Court need not decide whether to apply *Karst* to equate the "final agency action" necessary for jurisdiction with the "major federal action" necessary for a valid NEPA claim on the merits. The Court further does not decide herein under Rule 12(b)(6) or *Karst* whether there has been a major governmental action.[8] Should Plaintiffs choose to amend their Complaint, Plaintiffs must allege facts sufficient to demonstrate that there has been final agency action for jurisdictional purposes under both *Karst* and the two-factor test delineated above. Plaintiffs should also address which test is most appropriate to apply here.

Finally, should Plaintiffs amend their Complaint, Plaintiffs need something more than what they have presented to this point to support their allegation that the USFS

---

[7] The Court does not decide herein whether this outcome would differ if the USFS had approved the plan. The Court merely holds that where the USFS did not approve the plan, there is certainly no "final agency action" when the agency has otherwise taken minimal actions such as conducting research, giving advice on a plan, and building fences on the relevant land, as is the case here.

[8] Defendants additionally move to dismiss under Rule 12(b)(6) for failure to state a claim. The Court does not reach the merits of this 12(b)(6) motion either because the Court's resolution of the 12(b)(1) issue is dispositive.

approved the Horse Management Plan. Should Defendants again move to dismiss at that time, Defendants must address whether they concede that if the USFS did approve the Horse Management Plan, that action would be considered a "final agency action" for jurisdictional purposes.

### B. Leave to Amend

Generally, when a Court dismisses a complaint under Rule 12(b)(6) it must sua sponte grant Plaintiff leave to amend unless the Court concludes that amendment would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). The same considerations generally do not apply when the Court grants a motion to dismiss under Rule 12(b)(1) because typically a dismissal for lack of subject matter jurisdiction is without prejudice. *Dominguez ex rel. Dominguez Rivera v. Corbett*, No. CIV 09-474 TIC DCB, 2010 WL 3619432, at *6 (D. Ariz. Aug. 5, 2010), *report and recommendation adopted sub nom. Dominguez v. Corbett*, No. CV 08-648 TUC DCB, 2010 WL 3614661 (D. Ariz. Sept. 10, 2010). In some circumstances, however, a dismissal for lack of subject matter jurisdiction is with prejudice. *Id.* As the *Corbett* court concluded,

> "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear ... that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003). Although dismissal for lack of subject-matter jurisdiction is generally without prejudice, if there is no way a jurisdiction defect can be cured, dismissal with prejudice is proper, as, for example, when lack of subject-matter jurisdiction is based on a defendant's sovereign immunity. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir.1988).

*Id.*

Here, although the Court is dismissing for lack of subject matter jurisdiction, such dismissal would effectively be with prejudice as to this Court's factual conclusions. On this record, and for the reasons discussed above, the Court cannot conclude that it would be impossible for Plaintiffs to cure the deficiencies regarding their factual allegations

regarding Plaintiffs' second NEPA claim. *See generally Shmatko v. Arizona CVS Stores LLC*, No. CV-14-01076-PHX-DGC, 2014 WL 3809092, at *2 (D. Ariz. Aug. 1, 2014) (citing 28 U.S.C. § 1653). For this reason, the Court will grant Plaintiffs leave to amend their second NEPA claim within the deadline set below. The Court will not grant Plaintiffs leave to amend their first NEPA claim because such claim cannot be cured by amendment for the reasons discussed above, particularly that the 2017 IGA expired in 2022 and any claims thereunder are now moot.

Plaintiffs are cautioned going forward that their argument that the Court should apply the 12(b)(6) pleading standards to a 12(b)(1) motion because the arguments under each are "so connected" is rejected to the extent that the Court has delineated the factual issues herein. (*See generally* Doc. 20 at 5). The inquiry into whether there was final agency action *is* the subject matter jurisdiction inquiry; if this Court were to find the above factual issues related to final agency action are "so connected" as Plaintiffs argue, the subject matter jurisdiction inquiry in NEPA cases would necessarily collapse into the inquiry on the merits in all situations the Court can hypothesize. If Plaintiffs choose to amend, they must substantiate their factual allegations that underlie their jurisdictional allegations without assuming the Court will accept them as true.

### C. Intervenors' Motion to Intervene as Defendants

Because the Court is granting Defendants' Motion to Dismiss without prejudice, the Court also denies Intervenors' Motion to Intervene as Defendants without prejudice. Should Plaintiffs elect to amend their Complaint, Intervenors may refile their Motion to Intervene.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion to Dismiss, (Doc. 17), is **GRANTED** in part and **DENIED** in part. It is **GRANTED** under Rule 12(b)(1) with prejudice as to Plaintiffs' first NEPA claim and **GRANTED** under Rule 12(b)(1) with leave to amend as to Plaintiffs' second NEPA claim. The motion is **DENIED** as to Plaintiffs' standing

regarding Plaintiffs' second NEPA claim. The motion is **DENIED** without prejudice as to Defendants' 12(b)(6) arguments, and as to Defendants' Rule 12(b)(1) arguments under *Karst*. The Clerk of the Court shall not enter judgment at this time, as the Court is granting Plaintiffs leave to amend for the purposes explained herein.

**IT IS FURTHER ORDERED** that Intervenors' Motion to Intervene as Defendants, (Doc. 19), is **DENIED** as moot without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend within 30 days of the date of this Order. If Plaintiffs fail to file an amended complaint within this deadline, the Clerk of Court shall enter judgment dismissing this case with prejudice for lack of federal subject matter jurisdiction.

Dated this 31st day of October, 2023.

James A. Teilborg
Senior United States District Judge